**United States District Court**
For the Western District of Washington

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| BRADLEY MARSHALL, | Case No. CV-11-5319 SC |
| Plaintiff, | ORDER GRANTING MOTION FOR <u>JUDGMENT ON THE PLEADINGS</u> |
| v. | |
| WASHINGTON STATE BAR ASSOCIATION, et al., | |
| Defendants. | |

I. **INTRODUCTION**

This case constitutes Plaintiff Bradley Marshall's ("Marshall") fourth attempt to challenge his disbarment by the Washington Supreme Court. Marshall, an African-American, alleges that his disbarment was motivated by racial prejudice on the part of the fifty-four defendants in this action, including Washington State, the Washington State Bar Association ("WSBA"), WSBA's Board of Governors, WSBA's Disciplinary Board, several individually named frontline actors, and the Washington Supreme Court and ten of its current and former justices (collectively, "Defendants"). Marshall alleged similar due process and equal protection violations in his disciplinary proceedings before the WSBA and in his disbarment hearing before the Washington Supreme Court. Marshall also raised (or could have raised) nearly identical issues in two prior collateral attacks filed in federal district court and bankruptcy

court, an appeal filed with the Ninth Circuit, and two petitions for writs of certiorari filed with the United States Supreme Court. Marshall has been unsuccessful in each and every one of these actions.  In fact, the Ninth Circuit characterized his last collateral attack as "vexatious and frivolous."  This court is the seventh to address the alleged impropriety of Marshall's disbarment proceedings.

Now before the Court are motions for judgment on the pleadings brought by the WSBA Defendants and the State Defendants.[1]  ECF Nos. 52 ("WSBA Defs.' Mot."); 53 ("State Defs.' Mot.").  The Motions are fully briefed.  ECF Nos. 57 ("Opp'n"), 59 ("State Defs.' Reply"), 60 ("WSBA Reply").[2]  The Court held hearings on this matter on December 5, 2011 and May 7, 2012.  ECF Nos. 50, 77.  The Court concludes that Marshall's claims fail as a matter of law.  Marshall is effectively asking the Court to review the final judgment of the Washington Supreme Court.  Under the Rooker-Feldman doctrine, the Court lacks jurisdiction to do so.  Indeed, as a number of other courts have found that Marshall's prior collateral attacks were also barred by Rooker-Feldman, the Court could not find otherwise. The doctrine of res judicata requires that the Court respect the

---

[1] The "State Defendants" consist of Washington State, the Washington Supreme Court, and the ten Washington Supreme Court justices named in this action.  The remaining defendants are the "WSBA Defendants."  The WSBA Defendants have joined in the legal argument section of State Defendant's Motion.  ECF No. 54.

[2] Marshall also filed a surreply, ECF No. 61 ("Surreply"), sparking the parties to file an impressive number of additional motions. The State and WSBA Defendants filed an objection and motion to strike the surreply.  ECF Nos. 63, 65.  Marshall filed a response and a motion to strike Defendants' motion to strike.  ECF No. 64, 66.  Defendants filed an opposition to Marshall's motion to strike. ECF No. 67.  It appears that all the parties have violated various local rules in filing this additional briefing.  Nevertheless, the Court has reviewed and considered all arguments submitted.

United States District Court
For the Western District of Washington

final judgments previously entered against Marshall in his two

prior collateral attacks.  Accordingly, the Court GRANTS

Defendants' motions for judgment on the pleadings and DISMISSES

WITH PREJUDICE Marshall's claims in their entirety.  To prevent

further wasteful and vexatious re-litigation of this matter, the

Court issues an injunction, as described in Section V <u>infra</u>,

requiring Marshall to submit a motion for leave to file before

initiating any future suits against Defendants.

## II. <u>BACKGROUND</u>

### A. <u>Marshall's Disbarment and Subsequent Appeal</u>

Marshall was admitted to practice law in Washington in 1986.

ECF No. 44 ("TAC").  Prior to his disbarment in 2009, Marshall had

been disciplined on three separate occasions.  <u>See</u> <u>In re</u>

<u>Disciplinary Proceeding Against Marshall</u> ("<u>In re Marshall</u>"), 167

Wash. 2d 51, 83 (Wash. 2009).  In 1989, he was admonished for

"failing to respond to the WSBA's requests for information."  <u>Id.</u>

In 1998, he was reprimanded "for conduct involving dishonesty,

fraud, deceit, or misrepresentation."  <u>Id.</u>  And in 2007, he was

given an eighteen-month suspension for deceitful conduct, failing

to remit client funds, and failing to abide by his clients'

decisions, among other things.  <u>Id.</u>

Marshall's disbarment proceedings commenced in 2006, when

Marshall's former clients complained and the WSBA charged Marshall

with twelve counts of violating the Washington Rules of

Professional Conduct.  <u>Id.</u> at 58.  Among other things, the WSBA

alleged that Marshall: demanded additional fees to continue a

lawsuit that was paid for on a flat fee basis; filed a lawsuit and

**United States District Court**
For the Western District of Washington

a lien against a client who refused to pay him additional fees;
engaged in a deceptive attempt to compel settlement; and failed to
obtain consent for a conflict of client interest.  Id.  In his
defense, Marshall argued that the disbarment proceedings
constituted a violation of his due process and equal protection
rights.  RJN Ex. A ¶ 167.[3]  Marshall also argued that WSBA had
engaged in "selective prosecution."  Id.

Initially, Teena Killian ("Killian") was appointed as hearing
officer for Marshall's disciplinary proceedings.  In re Marshall,
167 Wash. 2d at 65.  At some point after May 25, 2006, Killian
applied for a position as disciplinary counsel with the WSBA.  Id.
On or about June 22, 2006, Killian recused and her previous orders
were vacated.  Id.  The next two hearing officers were removed
after challenges to their appointments.  Id.  Finally, on August
10, 2006, the chief hearing officer, James M. Danielson
("Danielson"), appointed himself as hearing officer in Marshall's
case.  Id.  Marshall did not challenge Danielson's appointment
during the proceedings.  Id.  Sometime around March 2007, following
a seven-day hearing, Danielson made 175 findings of fact and
recommended that Marshall be disbarred.  Id. at 58.  The WSBA
Disciplinary Board unanimously agreed.  Id.

The case proceeded to the Washington Supreme Court, where
Marshall disputed Danielson's factual findings and argued that his
due process rights had been violated because Danielson was biased.
Id. at 66.  Specifically, Marshall argued that: (1) Danielson knew
that Killian had applied for a job with the WSBA, (2) Danielson

---

[3] The WSBA Defendants filed a Request for Judicial Notice ("RJN")
in support of their motion for judgment on the pleadings and their
reply papers, attaching a number of exhibits.  ECF No. 51 ("RJN").

United States District Court
For the Western District of Washington

received an annual salary from the WSBA and participated in WSBA committees, and (3) Danielson refused some of Marshall's requests for discovery and testimony.  Id. at 68.

On October 1, 2009, the Washington Supreme Court issued a final unanimous ruling, rejecting each of Marshall's complaints against Danielson.  Id. at 69.  The court found that: Marshall's complaint concerning Killian was "unfounded" since Killian had recused and her orders had been vacated; Danielson's WSBA salary "d[id] not bias him any more than the salary paid to any judge who hears cases brought by the State of Washington"; and Marshall "fail[ed] to make a compelling argument that any of Mr. Danielson's adverse rulings were the result of bias or prejudice."  Id.  The court ultimately decided to disbar Marshall, finding that he "committed a number of different violations, which individually would have warranted disbarment."  Id. at 58.  On December 23, 2009, the court denied Marshall's request for a rehearing.  In re Marshall, 2009 Wash. LEXIS 1191 (Dec. 23, 2009).

Subsequently, Marshall appealed his disbarment, filing a petition for writ of certiorari with the United States Supreme Court.  Petition for a Writ of Certiorari, Marshall v. WSBA, No. 09-1357 ("Cert Pet."), 2010 U.S. S. Ct. Briefs LEXIS 1765.  Among other things, Marshall argued that Washington's disciplinary system was "structurally and operationally dysfunctional," that his disbarment proceedings had been conducted in "bad faith," and that his due process rights had been violated.  See id. at **40-43. Again, Marshall complained that Danielson knew about Killian's job application with the WSBA, that Danielson was biased because of his involvement with the WSBA, and that Danielson unfairly ruled

against Marshall's discovery requests.  Id. at 40-41.  The United States Supreme Court denied Marshall's petition.  Marshall v. WSBA, 130 S. Ct. 3480 (2010).

### B. **Marshall's First Collateral Attack**

While his disciplinary proceedings were still pending in Washington state court, Marshall filed two unsuccessful collateral attacks in federal court.  First, on May 15, 2008, Marshall filed suit against the WSBA and the State of Washington in the federal district court for the Western District of Washington.  RJN Ex. D. The case was assigned to Judge James L. Robart ("Judge Robart"). Marshall sued under 42 U.S.C. § 1983, alleging violations of substantive due process, procedural due process, equal protection, his First Amendment rights, his right to counsel, and the duty of fair representation.  Id.  Once again, Marshall complained of Danielson and Killian's involvement with his disciplinary proceedings.  See, e.g., id. at 11-13.  Marshall also argued that "the attorney disciplinary system in the State of Washington is fraught with racial discrimination" and that the WSBA "discriminates against ethnic minorities in investigations, charging, prosecuting, and sanctioning attorneys . . . ."  Id. at 38.  Marshall suggested that he had been singled out for selective enforcement because he is an African-American.[4]  Id. at 39.

Marshall relied on four ABA studies as evidence of structural

_____

[4] As evidence of racial discrimination, Marshall pointed out that the three other attorneys who worked with him on one of the matters for which he was sanctioned had not been subject to disciplinary proceedings.  RJN Ex. D at 39.  Two of these attorneys were Caucasian, the other, Wheeler, was African-American.  Id.  Marshall alleged that "the only known factor distinguishing Wheeler and Marshall is that Wheeler had been a WSBA hearing officer and was known by the WSBA staff."  Id.

United States District Court
For the Western District of Washington

6

**United States District Court**
For the Western District of Washington

deficiencies in Washington's disciplinary system: (1) the 1970 "Clark Report," which found that few lawyers serving within the disciplinary system were minorities; (2) the 1992 "McKay Report," which recommended that all disciplinary prosecutors be independent of the WSBA and an appropriate number of adjudicators should be minority members; (3) the "1993 ABA report," which recommended that Washington's disciplinary system be made independent from the WSBA; and (4) the "2006 ABA Report," which called for "hearing officers, review committees, and the Disciplinary Board to be subject to oversight by an independent administrative committee, while disciplinary counsel would be subject to primary oversight by the Washington Supreme Court." Id. at 5-7.

Judge Robart dismissed the case with prejudice, finding that he lacked jurisdiction to intervene in a disciplinary action. RJN Ex. E at 5. Judge Robart also stated that Marshall could challenge the findings of the disciplinary board in Washington state courts and, after a final decision by the Washington Supreme Court, Marshall could seek review in the United States Supreme Court. Id.

**C. Marshall's Second Collateral Attack**

Marshall's second collateral attack was filed in federal bankruptcy court. On May 1, 2009, one week after Marshall's oral argument in his disbarment hearings before the Washington Supreme Court, Marshall filed a voluntary bankruptcy petition. RJN Ex. H. Then on October 27, 2009, almost one month after the Washington Supreme Court issued its disbarment order, Marshall filed an adversary complaint against Washington State and the WSBA in bankruptcy court, again alleging due process, equal protection, and fair representation violations in connection with his disbarment

United States District Court
For the Western District of Washington

proceedings.  RJN Ex. L at 61-65.  The case was assigned to Judge
Philip H. Brandt ("Judge Brandt").  Marshall amended his complaint
once as a matter of right, adding eight new defendants, all of whom
are named in the instant action.  RJN Ex. M.  As in prior
proceedings, Marshall alleged structural deficiencies and racial
bias in the Washington disciplinary system, citing the same four
ABA reports.  See id. at 6-10.  Once again, Marshall alleged that
his rights to a fair and impartial hearing were violated because
Danielson and Killian were biased.  See id. at 17-32.  Though the
issue was not raised in Marshall's amended complaint, later motion
practice and appeals revealed that Marshall's aim was to avail
himself of the automatic stay imposed under the Bankruptcy Code to
prevent the Washington Supreme Court from disbarring him.[5]  See RJN
Ex. R at 3-4.

Judge Brandt dismissed the action with prejudice, finding,
among other things, that Marshall's claims were barred by the
Rooker-Feldman doctrine and that the WSBA Defendants were immune
from suit.  RJN Exs. P, Q at 5-7.  Judge Brandt also denied
Marshall's motion to file a second amended complaint -- the
complaint would have added as defendants members of the WSBA Board
of Governors and the justices of the Washington Supreme Court.  See
RJN Ex. Q at 20.

Marshall then appealed the bankruptcy court's decision to the
federal district court for the Western District of Washington and
then to the Ninth Circuit Court of Appeals.  Both appeals were
denied.  The federal district court judge, Judge John C. Coughenour

---

[5] Marshall raised a similar issue in his first petition for a writ
of certiorari before the United States Supreme Court.

**United States District Court**
For the Western District of Washington

1  ("Judge Coughenour"), concluded that Marshall's due process claims
2  had been "conclusively adjudicated and decided by the Washington
3  Supreme Court, and [Marshall] is barred from re-litigating those
4  questions under the Rooker-Feldman doctrine, and from litigating
5  the claims he could have brought before that court by claim
6  preclusion." RJN Ex. R. at 7. Judge Coughenour also remarked:
7  "There could be no more iconic case where Rooker-Feldman must
8  apply." Id. The Ninth Circuit affirmed, concluding that it lacked
9  jurisdiction to review Marshall's disbarment under Rooker-Feldman
10 and that Marshall's "conjectured constitutional 'violations' . . .
11 are simply attempts to relitigate due process arguments
12 conclusively decided by the Supreme Court of Washington during his
13 disbarment proceedings." Marshall v. Wash. State Bar Ass'n, 448
14 Fed. Appx. 661, 662 (9th Cir. 2011). The Ninth Circuit also upheld
15 the lower courts' decision to deny Marshall leave to amend: "Adding
16 additional members of the Bar Association or the Justices of the
17 Supreme Court of Washington as defendants would be futile under
18 Rooker-Feldman and the principles of absolute immunity, in addition
19 to needlessly prolonging this vexatious and wasteful litigation."
20 Id. at 663.

21      Marshall once again filed a petition for a writ of certiorari
22 with the United States Supreme Court. That petition was denied on
23 April 16, 2012. ECF No. 76.

24      **D.   Marshall's Third Collateral Attack -- The Instant Action**
25      On April 22, 2011, Marshall filed the instant action pro se,
26 his third collateral attack on the proceedings that culminated in
27 his disbarment. Marshall's Third Amended Complaint ("TAC"), the
28 operative complaint in the action, looks much like the complaints

he filed in his previous collateral attacks.  <u>Compare</u> TAC <u>with</u> RJN
Exs. D, L, M.  Once again, Marshall targets the structure of the
Washington disciplinary system (again citing the Clark and 1993 and
2006 ABA Reports), and the alleged bias of Danielson and Killian.
<u>See</u> TAC ¶¶ 17, 36, 55-76.

Marshall explicitly alleges that his disbarment and previous
suspensions were the result of racial discrimination.  <u>See</u>, <u>e.g.</u>,
<u>id.</u> ¶¶ 21-31.  As in his first collateral attack and his disbarment
proceedings, Marshall alleges that Defendants selectively enforced
Washington's ethics rules, refusing to take action against white
lawyers while selectively targeting African-American attorneys for
disciplinary action.  <u>See</u>, <u>e.g.</u>, <u>id.</u> ¶¶ 31, 37-41.  Marshall also
suggests that he was singled out for prosecution because he brought
discrimination claims against Defendants.  <u>See id.</u> ¶ 82.

For the first time, Marshall alleges various ex parte
communications among Danielson, the WSBA, and the justices of
Washington Supreme Court during various WSBA meetings.  <u>See</u>, <u>e.g.</u>,
<u>id.</u> ¶¶ 71, 73, 78-81, 83, 85.  For example, Marshall alleges:

> [O]n March 28, 2007, on the very night before defendant
> Danielson issued his decision in the Marshall case, a
> meeting of the discipline committee task force #2 of the
> [WSBA] Board of Governors was held in which Danielson was
> a member.  While defendant Danielson was not present, he
> was immediately notified of the results of the meeting by
> e-mail.  Included in this meeting were two members of the
> Board of Governors and one member of the Disciplinary
> Counsel's Office.  These undisclosed ex parte contacts
> fraudulently corrupted the legal process by influencing
> judges and members of the Disciplinary Board.

<u>Id.</u> at 71.  Marshall does not specifically allege what was
discussed during this meeting or any of the other meetings

referenced in the TAC.

Unlike the previous actions, Marshall's current suit frames Defendants' alleged wrongdoing as employment discrimination, alleging violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Section 49.60.030 of the Revised Code of Washington.[6]  See TAC ¶¶ 42, 53, 55.  However, Marshall's goal appears to be the same: he seeks damages and injunctive relief in connection with his disciplinary proceedings.

## III. <u>LEGAL STANDARD</u>

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." <u>Hal Roach Studios, Inc. v. Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989). Moreover, a motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss, and thus the pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. <u>Johnson v. Rowley</u>, 569 F.3d 40, 44 (2d Cir. 2009); <u>see also</u> <u>Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citing <u>Johnson</u> with approval).  A claim is plausible on its face when the plaintiff pleads "factual content

---

[6] Marshall filed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") on September 30, 2009 and the EEOC issued Marshall a Notice of Right to Sue on January 24, 2011.  RJN Exs. W, X, Z.

**United States District Court**
For the Western District of Washington

**United States District Court**
For the Western District of Washington

that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Ashcroft v.
Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v.
Twombly</u>, 550 U.S. 544, 556 (2007)).

IV.  <u>DISCUSSION</u>

    A.  <u>**The Court Takes Judicial Notice of Filings in Other Cases**
       **Related to Marshall's Disbarment**</u>

    As a preliminary matter, the Court addresses the parties'
arguments regarding judicial notice.  Defendants have requested
that the Court take judicial notice of pleadings, orders, opinions,
and other filings related to Marshall's disciplinary proceedings,
Marshall's previous attempts to litigate the propriety of his
disbarment, and Marshall's filings with the EEOC.  The Ninth
Circuit has held that courts may properly take judicial notice of
proceedings in other courts, court filings, and other matters of
public record.[7]  <u>See</u> <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442
F.3d 741, 746 n.6 (9th Cir. 2006); <u>United States ex rel. Robinson
Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th
Cir. 1992).  Accordingly, Defendants' request for judicial notice
is GRANTED.

    Marshall objects to Defendants' request for judicial notice on
the grounds that Defendants "have not shown or even proffered that
these proposed documents are relevant to this case."  Surreply at
10.  This argument lacks merit.  The documents attached to the RJN
are clearly relevant to the issue of whether Marshall has had a

---

[7] The Ninth Circuit has also held that judicial notice of EEOC
filings is proper.  <u>Cunningham v. Litton Indus.</u>, 413 F.2d 887, 889
(9th Cir. 1969).

1   full and fair opportunity to litigate this matter in prior federal

2   and state proceedings.  Marshall also argues that relying on facts

3   outside the pleadings would violate the "longstanding precedent

4   that directs the Court to construe the Complaint in the light most

5   favorable to the non-moving party." Id. at 11.  This argument is

6   also unavailing.  A court does not automatically transform a motion

7   for judgment on the pleadings into a motion for summary judgment by

8   relying on court pleadings, filings, and decisions to determine

9   whether a claim has already been litigated.  See Reyn's Pasta

10  Bella, 442 F.3d at 746 n.6 (taking judicial notice of court filings

11  "[t]o determine what issues were actually litigated" in a prior

12  action).

13  **B.   Marshall's Claims Are Barred By Rooker-Feldman**

14       Defendants argue that Marshall's current collateral attack,

15  like his two prior collateral attacks, is barred by the Rooker-

16  Feldman doctrine.  WSBA Defs.' Mot. at 14-18; State Defs.' Mot at

17  18-19.  The Court agrees.

18       Rooker-Feldman is derived from two Supreme Court cases: Rooker

19  v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of

20  Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  "It

21  stands for the relatively straightforward principle that federal

22  district courts do not have jurisdiction to hear de facto appeals

23  from state-court judgments." Carmona v. Carmona, 603 F.3d 1041,

24  1050 (9th Cir. 2010), cert. denied, 131 S. Ct. 1492 (2011).  A suit

25  constitutes a forbidden de facto appeal when "a federal plaintiff

26  asserts as a legal wrong an allegedly erroneous decision by a state

27  court, and seeks relief from a state court judgment based on that

28  decision." Id. (internal quotations and citation omitted).  Put

**United States District Court**
For the Western District of Washington

1  another way: "If claims raised in the federal court action are

2  'inextricably intertwined' with the state court's decision such

3  that the adjudication of the federal claims would undercut the

4  state ruling . . . , then the federal complaint must be dismissed

5  for lack of subject matter jurisdiction." Bianchi v. Rylaarsdam,

6  334 F.3d 895, 898 (9th Cir. 2003).

7      This case presents facts similar to others which have been

8  dismissed under Rooker-Feldman, including Feldman, one of the cases

9  from which the doctrine takes its name.  In Feldman, the District

10 of Columbia's highest court denied the plaintiff's applications for

11 admission to the bar of the District of Columbia.  460 U.S. at 468.

12 Instead of appealing to the United States Supreme Court, the

13 plaintiff filed suit in federal district court, alleging violations

14 of the Fifth Amendment and Sherman Act and seeking an order

15 requiring the defendants to grant the plaintiff immediate admission

16 to the District of Columbia bar.  Id.  The district court found

17 that it lacked jurisdiction.  Id. at 470.  The United States

18 Supreme Court agreed, finding that district courts "do not have

19 jurisdiction . . . over challenges to state court decisions in

20 particular cases arising out of judicial proceedings, even if those

21 challenges allege that the state court's action was

22 unconstitutional."  Id. at 486.

23     Likewise, the Ninth Circuit has applied Rooker-Feldman to bar

24 federal lawsuits which challenged state attorney disciplinary

25 proceedings.  For example, in Mothershed v. Justices of the Supreme

26 Court, 410 F.3d 602, 605 (9th Cir. 2005), the plaintiff was

27 licensed to practice in Oklahoma but lived and practiced in

28 Arizona.  The Supreme Court of Arizona censured the plaintiff for

the unauthorized practice of law and, subsequently, the Supreme
Court of Oklahoma disbarred him.  Mothershed, 410 F.3d at 605.  The
plaintiff filed suit against the disciplinary commissions and
supreme courts of Arizona and Oklahoma in federal district court,
asserting claims under 42 U.S.C. § 1983 for due process and other
constitutional violations, as well as various common law claims.
Id.  The Ninth Circuit upheld the district court's conclusion that
it lacked subject matter jurisdiction to review the plaintiff's
disciplinary proceedings under Rooker-Feldman.  Id. at 607.

     The Court finds that Marshall's claims in the instant action
are precisely the type of collateral attack on state judicial
proceedings that are barred under Rooker-Feldman.  Marshall seeks
to directly and indirectly challenge the final decision of the
Washington Supreme Court to disbar and suspend him, asserting those
decisions were erroneous, unlawful, and discriminatory.  This Court
lacks jurisdiction to do so.  Even if Marshall is not seeking to
directly overturn his disbarment order, his claims are still barred
since all of his alleged injuries and damages flow from that
order.[8]  See TAC ¶¶ 47 ("In disciplining [Marshall], the Defendants
treated [him] in a disparate and racially discriminatory fashion

---

[8] Marshall has taken inconsistent positions on the nature of the
injunctive relief he seeks.  The TAC is silent on the matter.  At
the Court's December 5, 2011 hearing, Marshall stated that he
wanted the Court to "enjoin the disbarment order."  ECF No. 50
("Dec. 5, 2011 Hearing Transcript") at 24.  At the May 7, 2012
hearing, Marshall initially indicated that, under Rooker-Feldman,
the Court does not have the power to overturn the Washington
Supreme Court's disbarment order and that he was only seeking
systemic reforms to the WSBA disciplinary system.  Later in the
hearing, he changed course and again indicated that he was seeking
to enjoin the disbarment order.  The Court assumes that Marshall's
first and last statements on the issue are accurate.  In any event,
Marshall lacks standing to ask the Court to reform the WSBA
disciplinary system as he is no longer a member of the bar.  See
City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)

United States District Court
For the Western District of Washington

**United States District Court**
For the Western District of Washington

1  [in violation of Title VII] . . . ."), 53 ("The actions of the

2  Defendants in suspending . . . and then disbarring [Marshall]  . .

3  . constitute racial discrimination . . . in violation of 42 USC §

4  1981[.]"), 55 ("In suspending [Marshall] . . . and later disbarring

5  him . . . the Defendants practiced racial discrimination in

6  violation of RCW 49.60[.]").  Accordingly, his claims are

7  inextricably intertwined with the Washington Supreme Court's

8  decision and the Court cannot rule on them without undercutting

9  that ruling.[9]

10    Even if the Court had some doubt about its lack of

11  jurisdiction (and it does not), res judicata would require the

12  Court to apply Rooker-Feldman.  As discussed in more detail in

13  Section IV.C infra, the instant action raises the same claims that

14  were brought or could have been brought in Marshall's two prior

15  collateral attacks in federal court.  Both of these previous

16  collateral attacks were dismissed with prejudice on Rooker-Feldman

17  grounds.  Accordingly, the Court could not possibly reach a

18  different conclusion here.

19    Marshall argues that Rooker-Feldman should not apply in the

20  instant action because he did not have an opportunity to present

21  his claims for racial discrimination in state court.  Opp'n at 17-

22  18.  This argument is predicated on the Eleventh Circuit's decision

23  _____

24  [9] At the Court's May 7, 2012 hearing, Marshall indicated that he is
    also bringing a claim for breach of contract, based on some kind of

25  implied contract between himself and the WSBA.  Marshall explained
    that the WSBA breached this contract when it disciplined and

26  disbarred him in a racially discriminatory manner.  This claim
    fails as it is not pled in the TAC.  Even if it was, the claim

27  would be barred by Rooker-Feldman as it is inextricably intertwined
    with the Washington Supreme Court's disbarment order.  Accordingly,

28  granting Marshall leave to amend his complaint for a third time
    would be futile.

1  in <u>Wood v. Orange</u>, 715 F.2d 1543 (11th Cir. 1983).  That case is

2  inapposite.  In <u>Wood</u>, a state court entered liens against the

3  plaintiffs, without providing them notice or an opportunity to

4  participate in the lien proceedings.  <u>Wood</u>, 715 F.2d at 1545.  The

5  plaintiffs subsequently filed suit in federal district court

6  alleging due process violations.  <u>Id.</u> at 1545.  On appeal, the

7  Eleventh Circuit found that the "crucial issue" in determining

8  whether <u>Rooker-Feldman</u> should apply was "whether plaintiffs had a

9  reasonable opportunity to raise their objections in the proceedings

10  where the judgment creating the liens was entered and affirmed."

11  <u>Id.</u> at 1547.  The court held that the plaintiffs were denied such

12  an opportunity because they did not learn of the liens until their

13  creditors called, "well after the time for filing an appeal had

14  elapsed." <u>Id.</u> at 1548.

15       Unlike the plaintiffs in <u>Wood</u>, Marshall was well aware of the

16  disciplinary charges brought against him and fully participated in

17  the disciplinary proceedings.  Further, Marshall admits that he

18  filed an EEOC complaint for racial discrimination in connection

19  with his May 2007 suspension in May 2008 and that he learned of the

20  alleged misconduct in his disbarment proceedings in August 2008.[10]

21  Opp'n at 17, n.1.  Accordingly, Marshall had a reasonable

22  opportunity to present his allegations of racial discrimination and

23  bias to the Washington Supreme Court -- both during his disbarment

24  hearing and in his petition for rehearing -- as well as to the

25  ───────────────────
26  [10]  The Court notes that Marshall could have advanced his current theories of racial discrimination even before May 2008.  Marshall's charges of racial discrimination are predicated upon allegations
27  that the WSBA has a history of selectively enforcing ethics violations.  Evidence of this alleged selective enforcement was
28  presumably available to Marshall at the outset of his disciplinary proceedings.

**United States District Court**
For the Western District of Washington

United States Supreme Court in his first petition for a writ of certiorari.  Indeed, the Washington Supreme Court addressed and rejected Marshall's charges of bias in its disbarment order.  <u>In re Marshall</u>, 167 Wash. 2d at 69.  Marshall suggests that the fact that the Washington Supreme Court never discussed "racial discrimination" in its order somehow precludes application of <u>Rooker-Feldman</u> in the instant action.  Opp'n at 18-19.  Also, at the May 7, 2012 hearing, Marshall argued that <u>Rooker-Feldman</u> should not apply since he did not become aware of the full extent of Defendants' alleged misconduct until recently.  But that is not the law.  The pertinent inquiry is whether Marshall had a reasonable opportunity to raise objections in the state court proceedings.  He did have such an opportunity and did in fact raise objections.  As such, his claim is barred under <u>Rooker-Feldman</u>.

Next, Marshall contends that there is a general exception to <u>Rooker-Feldman</u>, whereby lower federal courts may review state court judgments that are procured by fraud, deception, or mistake.  Opp'n at 18.  Marshall contends that the WSBA engaged in "fraud, deception, and malicious ethical violations" in order to procure his disbarment by assigning biased hearing officers, i.e., Killian and Danielson, to his disciplinary proceedings.  <u>Id.</u> at 19.  He further contends that high-ranking bar officials and Washington Supreme Court justices turned a blind eye to this alleged misconduct.  <u>Id.</u>

This argument fails for a number of reasons.  First, the Ninth Circuit has never recognized such an exception to <u>Rooker-Feldman</u>.  Second, the authority on which Marshall relies, <u>In re Sun Valley Foods Co.</u>, 801 F.2d 186 (6th Cir. 1986), is inapposite.  In <u>Sun</u>

United States District Court
For the Western District of Washington

1    *Valley*, the Sixth Circuit said of *Rooker-Feldman*: "A federal court

2    'may entertain a collateral attack on a state court judgment which

3    is alleged to have been procured through fraud, deception,

4    accident, or mistake . . . .'"  801 F.2d at 189 (quoting *Resolute*

5    *Ins. Co. v. State of N. Carolina*, 397 F.2d 586, 589 (4th Cir.

6    1968)).  The language the Sixth Circuit quotes from *Resolute*

7    *Insurance* concerns an exception to res judicata, not *Rooker-*

8    *Feldman*.  Accordingly, the Court declines to follow *Sun Valley*.

9    See *West v. Evergreen Highlands Ass'n*, 213 Fed. Appx. 670, 674

10   (10th Cir. 2007) (stating "there is good reason to balk" at the

11   *Rooker-Feldman* exception enunciated in *Sun Valley*).  Third, even if

12   *Sun Valley* was controlling law, it would not save Marshall's

13   claims.  The *Sun Valley* exception depends on the improper

14   procurement of a judgment, for example, where a party "deceived the

15   Court into a wrong decree."  *Sun Valley*, 801 F.2d at 189 (internal

16   quotations omitted).  Marshall does not allege that the Washington

17   Supreme Court was "deceived" into disbarring him.  Rather, Marshall

18   claims that the Washington Supreme Court "justices were aware of

19   the wrongdoing but refused to stop it."  Opp'n at 19.  Further,

20   Marshall's argument is circular.  "He claims in effect that the

21   *Rooker-Feldman* doctrine barring federal review of state decisions

22   does not apply if, by engaging in the very review the doctrine

23   prohibits, a federal court concludes that a state court erred.

24   Such a self-justifying exception would swallow the *Rooker-Feldman*

25   doctrine whole."  *West*, 213 Fed. Appx. at 674.  Accordingly, the

26   "procurement by fraud" exception, to the extent that it exists,

27   does not apply here.

28        At the Court's May 7, 2012 hearing, Marshall also argued that

**United States District Court**
For the Western District of Washington

1  the Washington Supreme Court's decision is not entitled to

2  deference since it was not reached through a judicial process.

3  Marshall complained that there is no "separation of powers" in the

4  Washington disciplinary system: The WSBA hires the hearing officers

5  and the prosecutors; the Washington Supreme Court justices who

6  review the WSBA hearing officers' findings have served as

7  presidents of the WSBA; and the hearing officers, prosecutors, and

8  Washington Supreme Court justices hold administrative meetings

9  that, according to Marshall, amount to ex parte contacts.  Marshall

10 also faults the Washington Supreme Court for failing to make its

11 own factual findings during his disbarment proceedings.

12      The Court has a number of concerns with the merits of

13 Marshall's position.  However, the Court need not reach the merits.

14 These arguments were raised and rejected in Marshall's prior

15 collateral attacks.  In his first collateral attack, Marshall also

16 complained about the structure of the WSBA disciplinary system,

17 including the independence of its various branches.  <u>See</u>, <u>e.g.</u>, RJN

18 Ex. D ¶¶ 3.14-3.15.  Judge Robart dismissed the action stating that

19 Marshall should "avail[] himself of the Washington state courts to

20 challenge the finding of the disciplinary board."  RJN Ex. E at 5.

21 In his second collateral attack, Marshall made almost identical

22 allegations.  RJN Ex. M ¶¶ 4.11-4.24.  Again his claims were

23 dismissed, this time expressly on <u>Rooker-Feldman</u> grounds.  RJN Ex.

24 P at 2.  Accordingly, the Court cannot and will not revisit these

25 issues here.

26      Like Judge Robart, Judge Brandt, Judge Coughenour, and the

27 Ninth Circuit, the Court finds that it lacks jurisdiction over this

28 action under <u>Rooker-Feldman</u>.

**United States District Court**
For the Western District of Washington

### C. **Marshall's Claims Are Also Barred By Res Judicata**

Even if Marshall's claims were not barred by Rooker-Feldman, they would fail under res judicata.  Marshall has already raised substantially similar claims before the Washington Supreme Court, Judge Robart, Judge Brandt, Judge Coughenour, the Ninth Circuit, and the United States Supreme Court.  In each and every case, Marshall's claims have been rejected.  Marshall's employment discrimination claims are simply another attempt to relitigate his previous claims.  Marshall is not entitled to yet another bite at the apple.

Res judicata, also known as claim preclusion, bars relitigation of a claim that has been determined by a final judgment.  Williams v. Leone & Keeble, Inc., 171 Wash. 2d 726, 730 (Wash. 2011).  Res judicata also bars plaintiffs from recasting their claims under a different theory so that they may sue again. Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 867 (9th Cir. 1995).  "All issues which might have been raised and determined [in prior litigation] are precluded."  Id. (internal citations and quotations omitted).  "Res judicata applies where the subsequent action involves (1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision is made as did a prior adjudication."  Williams, 171 Wash. 2d at 730.  The Court finds that all elements of res judicata have been satisfied here.

First, a final judgment was rendered in Marshall's disbarment proceedings, In re Marshall, 167 Wash. 2d at 89, as well as in his two prior collateral attacks, which were dismissed with prejudice,

**United States District Court**
For the Western District of Washington

1    RJN Exs. E at 6, P at 2.  Marshall contends that his first

2    collateral attack was "dismissed without prejudice" and "[no]

3    judgment on the merits was ever entered."  Opp'n at 22.  Marshall

4    misstates the facts.

5         Second, the subject matter of this case is identical to the

6    subject matter involved in Marshall's state disciplinary

7    proceedings and his two collateral attacks: the propriety of

8    Marshall's prior state disciplinary proceedings and disbarment.

9    Marshall argues, without further explanation, that his claims are

10   not barred because they arose after October 1, 2009 -- the date of

11   the Washington Supreme Court's disbarment order.  Opp'n at 22.

12   This argument lacks merit.  All of the relevant conduct alleged in

13   the TAC occurred before Marshall's disbarment.[11]  Further, in his

14   EEOC Intake Questionnaire, Marshall concedes that the last

15   allegedly discriminatory act occurred on October 1, 2009.  See RJN

16   Ex. W.

17        Third, the causes of action in this case are identical to

18   those that were asserted or could have been asserted in Marshall's

19   prior actions.  Marshall argues that his state and federal

20   employment discrimination claims are not barred because they were

21   never alleged, considered, or rejected in his previous actions.

22   Opp'n at 23.  However, a party cannot avoid res judicata merely by

23   recasting its previous claims as a new legal theory, by raising new

24   _____

[11] Marshall does allege: "From 2002 to the present, [Marshall]
25   requested, but Defendants discriminated against Plaintiff by
     denying . . . services and otherwise affected the terms,
26   conditions, or privileges of [Marshall]'s employment because of his
     race."  TAC at 2.  However, it is unclear why WSBA would have a
27   duty to provide services, such as "bar materials, continuing legal
     education courses, [or] law office management counseling" to a
28   disbarred attorney.  See id.

claims that could have been brought in a prior action, or by
alleging conduct not alleged previously.  See Costantini v. Trans
World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982).  That is
precisely what Marshall is attempting to do here.

The Ninth Circuit applies several criteria to determine
whether successive lawsuits involve a single cause of action:

> (1) whether rights or interests established in the prior
> judgment would be destroyed or impaired by prosecution of
> the second action; (2) whether substantially the same
> evidence is presented in the two actions; (3) whether the
> two suits involve infringement of the same right; and (4)
> whether the two suits arise out of the same transactional
> nucleus of facts.

Id. at 1201-1202 (internal quotations and citations omitted).  The
fourth, "most important," criterion is satisfied here.  See id. at
120.  All of Marshall's actions arose out of the same transactional
nucleus of facts: the proceedings that culminated in his
disbarment.  The other criteria are also satisfied.  The Court
cannot award the injunctive and declaratory relief requested by
Marshall without impairing the Washington Supreme Court's
disbarment order or Judge Robart, Judge Brandt, Judge Coughenour,
and the Ninth Circuit's findings that Marshall's collateral attacks
are barred under Rooker-Feldman.  Marshall intends to rely on the
same evidence in the instant action that he has cited in prior
complaints and petitions, including Killian's job application,
Danielson's WSBA salary, the Clark Report, the McKay Report, and
the 1993 and 2006 ABA reports.  Additionally, as in his disbarment
proceedings and his first collateral attack, Marshall now alleges
that he was singled out for selective enforcement because he is
African American.  Compare TAC ¶¶ 31, 37-41, with RJN Exs. A ¶ 167,

**United States District Court**
For the Western District of Washington

1  D at 39.  Finally, Marshall asserts the same rights here that he

2  previously asserted in his state and federal court actions,

3  including his rights to due process and equal protection in his

4  disbarment proceedings.  Compare TAC ¶¶ 17, 19, 38, 49 with RJN

5  Exs. A ¶ 167, D at 43-44, M at 45-50.

6      Fourth, the parties in this action are identical to, or in

7  privity with, the parties to Marshall's prior state disbarment

8  proceedings or the parties to Marshall's prior collateral attacks.

9  Although the Washington Supreme Court justices were named as

10  Defendants for the first time in the instant action, Marshall has

11  previously attempted to sue them in connection with his disbarment.

12  In his second collateral attack, Judge Brandt denied Marshall leave

13  to amend his complaint so as to add the justices as defendants.

14  See RJN Ex. P.  Judge Coughenour affirmed finding that amendment

15  would have been "futile" under Rooker-Feldman.  Id.  The Ninth

16  Circuit also affirmed, concluding that adding more defendants would

17  only "prolong[] this vexatious and wasteful litigation."[12]

18  Marshall, 448 Fed. Appx. at 663.

19      The final element of res judicata "simply requires a

20  determination of which parties in the second suit are bound by the

21  judgment in the first suit."  Ensley v. Pitcher, 152 Wash. App.

22  891, 905 (Wash. Ct. App. 2009).  Here, Marshall's prior collateral

23  attacks named the WSBA and the State of Washington, as does this

24  one.  All of the WSBA Defendants named in this case are in privity

25  with the WSBA.  The Washington Supreme Court is also bound by its

26

27  [12] Even if the Washington Supreme Court was not involved in the
    prior actions, its justices are entitled to judicial immunity.  See

28  Section IV.D infra.

24

order disbarring Marshall.  Further, Marshall defended the prior state disbarment proceeding and filed the prior collateral attacks challenging the disbarment proceedings.  Accordingly, all elements of res judicata are met.[13]

### D.  Marshall's Claims Could Be Dismissed on a Number of Other Grounds

As Marshall's claims are barred by Rooker-Feldman and res judicata, the Court need not review all of the other grounds for dismissal claimed by Defendants.  However, having considered the parties' other arguments, the Court notes that, even if it did have jurisdiction, Marshall's claims would likely fail for a number of other reasons.  As the Court has already determined that it lacks jurisdiction, it does not review these issues in significant length or detail.

Judicial Immunity:  Marshall's claims against the WSBA and State Defendants are also barred under the doctrine of judicial immunity.  Judicial and quasi-judicial immunity are not only available to judges but also to others who have a sufficiently close nexus to the adjudicative process, including prosecutors, administrative law judges, and agency officials performing functions analogous to those of a prosecutor.  See Hirsch v. Justices of the Supreme Court, 67 F.3d 708, 715 (9th Cir. 1995).  Several cases have applied the doctrine in circumstances such as this, where a plaintiff attorney sues in connection with disciplinary proceedings.  See id.; Clark v. Washington, 366 F.2d

---

[13] Defendants also argue that Marshall's claims are barred by collateral estoppel.  The merits of this argument are less clear.  As Marshall's claims are clearly barred by Rooker-Feldman and res judicata, the Court does not address the issue.

**United States District Court**
For the Western District of Washington

678, 681 (9th Cir. 1966).  Marshall does not adequately address or distinguish any of these cases.

Title VII:  Marshall's Title VII claims fail for a variety of reasons.  As an initial matter, Marshall's claim is time barred under 42 U.S.C. § 20000e-5(e)(1) since the last alleged unlawful employment practice alleged by Marshall occurred on October 1, 2009, the date of his disbarment, over a year before Marshall filed his complaint in the instant action.  Further, Marshall cannot bring a Title VII claim for employment discrimination against Defendants because he was never employed by them.  See Camacho v. Puerto Rico Ports Auth., 369 F.3d 570, 577-78 (1st Cir. 2004).  Relying on the D.C. Circuit's decision in Sibley Memorial Hospital v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973), Marshall contends that Title VII is applicable because his disbarment interfered with his employment prospects.  However, this interference theory only applies where the defendant has a "highly visible nexus" with the creation and continuance of direct employment relationships, Sibley, 488 F.2d at 1342, or where the defendant exercises a degree of control over the third-party employer.  See, e.g., Ass'n of Mexican-Am. Educators v. State of California, 231 F.3d 572, 581 (9th Cir. 2000) (applying interference theory where "state's involvement is not limited to general legislative oversight but, rather, affects the day-to-day operations of [the third-party employer]").  No such relationship exists here.  Further, a number of courts have rejected the notion that agencies which regulate professional licenses may be held liable under such a theory.  See, e.g., Fields v. Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1021 (5th Cir. 1991).

**United States District Court**
For the Western District of Washington

### E.   Marshall Is a Vexatious Litigant

The WSBA Defendants have asked the Court to declare Marshall a vexatious litigant and to enter a pre-filing order concerning any future claims filed in connection with Marshall's disbarment.  WSBA Defs.' Mot. at 43.  Before a court may file such pre-filing restrictions, the court must apply the following four guidelines: (1) the litigant must be "provided with adequate notice and a chance to be heard before the order [is] filed"; (2) the court must create a record of review which includes a "listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) the court must make "substantive findings as to the frivolous or harassing nature of the litigant's actions"; and (4) "the[] order[] must be narrowly tailored to closely fit the specific vice encountered." De Long v. Hennessey, 912 F.2d 1144, 1147-48 (9th Cir. 1990).

The Court finds that there is adequate justification for finding that Marshall is a vexatious litigant and for entering a pre-filing order against him.  First, Marshall was provided with adequate notice.  The WSBA Defendants requested a pre-filing order in their moving papers and Marshall had an opportunity to address that request in his opposition papers, in his surreply, and at the Court's May 7, 2012 hearing.  Marshall declined to do so.  Second, the Court has listed all of Marshall's previous cases and filings in Section II supra.  Third, the record in this case amply supports a finding that Marshall is a vexatious litigant and that a pre-filing order is necessary to prevent further abuse of the judicial process.  Marshall's allegations in the instant action are similar or identical to those he asserted or could have asserted before the

**United States District Court**
For the Western District of Washington

1  Washington Supreme Court, the United States Supreme Court (in two

2  separate cert petitions), Judge Robart, Judge Brandt, Judge

3  Coughenour, and the Ninth Circuit.  Each of these six courts

4  rejected Marshall's allegations.  Even before Marshall filed the

5  instant action, the Ninth Circuit went so far as to deem his second

6  collateral attack "vexatious and wasteful."  <u>Marshall</u>, 448 Fed.

7  Appx. at 663.  Thus, Marshall was on notice that his claims in the

8  instant action were barred by <u>Rooker-Feldman</u> and res judicata.

9  Nevertheless, he proceeded to bring yet another suit against fifty-

10  four defendants, alleging the same claims that have been raised and

11  rejected before.[14]  Fourth, the Court finds that the restrictions

12  set forth in the conclusion below are narrowly tailored to address

13  and prevent Marshall's vexatious and wasteful re-litigation and

14  collateral attack of his disbarment while not infringing upon

15  Marshall's right of access to the courts.

16

17  **V.**    <u>**CONCLUSION**</u>

18       For the reasons set forth above, the Court GRANTS Defendants'

19  motions for judgment on the pleadings.  Bradley Marshall's claims

20  in this matter are hereby DISMISSED WITH PREJUDICE in their

21  entirety.  The Court also enters the following pre-filing order:

22  Should Marshall wish to file any future claims in this District

23  against any Defendant in this action, whether individually or in

24  ─────────────────────
[14] At the December 5, 2011 hearing, when there were only fifty-one

25  defendants in the case, Marshall represented to the Court that he
would endeavor to voluntarily dismiss "people that shouldn't be in

26  the case."  Dec. 5, 2011 Hearing Transcript at 25.  Marshall has
yet to dismiss a single defendant.  Instead, he amended his

27  complaint again to name additional parties.  At the May 7, 2012
hearing, Marshall conceded that a number of these fifty-four

28  defendants should be dismissed as they had a tenuous connection to
the case.

any combination thereof, each filing shall be preceded by a Motion for Leave.  The Motion for Leave shall contain a certification under Federal Rule of Civil Procedure 11 providing the factual and legal basis for the claim and the specific reason(s) why it falls outside the scope of this Order, and shall be accompanied by a copy of the pleading or document Marshall seeks leave to file.  Such future claims shall not be deemed "filed," for purposes of tolling the statute of limitations or otherwise, and shall not be served until and unless the Court grants the Motion for Leave.  This pre-filing order shall apply only to future claims that are directly or indirectly related to Marshall's disbarment or the disciplinary proceedings described above.

IT IS SO ORDERED.

Dated:  May 23, 2012

_____
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Western District of Washington