IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| BRADLEY MARSHALL, | ) Case No. CV-11-5319 SC |
| | ) |
| Plaintiff, | ) ORDER GRANTING MOTION FOR |
| | ) <u>JUDGMENT ON THE PLEADINGS</u> |
| v. | ) |
| | ) |
| WASHINGTON STATE BAR ASSOCIATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## I.  <u>INTRODUCTION</u>

This case constitutes Plaintiff Bradley Marshall's ("Marshall") fourth attempt to challenge his disbarment by the Washington Supreme Court.  Marshall, an African-American, alleges that his disbarment was motivated by racial prejudice on the part of the fifty-four defendants in this action, including Washington State, the Washington State Bar Association ("WSBA"), WSBA's Board of Governors, WSBA's Disciplinary Board, several individually named frontline actors, and the Washington Supreme Court and ten of its current and former justices (collectively, "Defendants").  Marshall alleged similar due process and equal protection violations in his disciplinary proceedings before the WSBA and in his disbarment hearing before the Washington Supreme Court.  Marshall also raised (or could have raised) nearly identical issues in two prior collateral attacks filed in federal district court and bankruptcy

court, an appeal filed with the Ninth Circuit, and two petitions for writs of certiorari filed with the United States Supreme Court. Marshall has been unsuccessful in each and every one of these actions. In fact, the Ninth Circuit characterized his last collateral attack as "vexatious and frivolous." This court is the seventh to address the alleged impropriety of Marshall's disbarment proceedings.

Now before the Court are motions for judgment on the pleadings brought by the WSBA Defendants and the State Defendants.[1] ECF Nos. 52 ("WSBA Defs.' Mot."); 53 ("State Defs.' Mot."). The Motions are fully briefed. ECF Nos. 57 ("Opp'n"), 59 ("State Defs.' Reply"), 60 ("WSBA Reply").[2] The Court held hearings on this matter on December 5, 2011 and May 7, 2012. ECF Nos. 50, 77. The Court concludes that Marshall's claims fail as a matter of law. Marshall is effectively asking the Court to review the final judgment of the Washington Supreme Court. Under the Rooker-Feldman doctrine, the Court lacks jurisdiction to do so. Indeed, as a number of other courts have found that Marshall's prior collateral attacks were also barred by Rooker-Feldman, the Court could not find otherwise. The doctrine of res judicata requires that the Court respect the

---

[1] The "State Defendants" consist of Washington State, the Washington Supreme Court, and the ten Washington Supreme Court justices named in this action. The remaining defendants are the "WSBA Defendants." The WSBA Defendants have joined in the legal argument section of State Defendant's Motion. ECF No. 54.

[2] Marshall also filed a surreply, ECF No. 61 ("Surreply"), sparking the parties to file an impressive number of additional motions. The State and WSBA Defendants filed an objection and motion to strike the surreply. ECF Nos. 63, 65. Marshall filed a response and a motion to strike Defendants' motion to strike. ECF No. 64, 66. Defendants filed an opposition to Marshall's motion to strike. ECF No. 67. It appears that all the parties have violated various local rules in filing this additional briefing. Nevertheless, the Court has reviewed and considered all arguments submitted.

final judgments previously entered against Marshall in his two
prior collateral attacks.  Accordingly, the Court GRANTS
Defendants' motions for judgment on the pleadings and DISMISSES
WITH PREJUDICE Marshall's claims in their entirety.  To prevent
further wasteful and vexatious re-litigation of this matter, the
Court issues an injunction, as described in Section V _infra_,
requiring Marshall to submit a motion for leave to file before
initiating any future suits against Defendants.

## II.   **BACKGROUND**

### A.   **Marshall's Disbarment and Subsequent Appeal**

Marshall was admitted to practice law in Washington in 1986.
ECF No. 44 ("TAC").  Prior to his disbarment in 2009, Marshall had
been disciplined on three separate occasions.  See In re
Disciplinary Proceeding Against Marshall ("In re Marshall"), 167
Wash. 2d 51, 83 (Wash. 2009).  In 1989, he was admonished for
"failing to respond to the WSBA's requests for information." _Id._
In 1998, he was reprimanded "for conduct involving dishonesty,
fraud, deceit, or misrepresentation." _Id._  And in 2007, he was
given an eighteen-month suspension for deceitful conduct, failing
to remit client funds, and failing to abide by his clients'
decisions, among other things. _Id._

Marshall's disbarment proceedings commenced in 2006, when
Marshall's former clients complained and the WSBA charged Marshall
with twelve counts of violating the Washington Rules of
Professional Conduct. _Id._ at 58.  Among other things, the WSBA
alleged that Marshall: demanded additional fees to continue a
lawsuit that was paid for on a flat fee basis; filed a lawsuit and

a lien against a client who refused to pay him additional fees;
engaged in a deceptive attempt to compel settlement; and failed to
obtain consent for a conflict of client interest.  Id.  In his
defense, Marshall argued that the disbarment proceedings
constituted a violation of his due process and equal protection
rights.  RJN Ex. A ¶ 167.[3]  Marshall also argued that WSBA had
engaged in "selective prosecution."  Id.

Initially, Teena Killian ("Killian") was appointed as hearing
officer for Marshall's disciplinary proceedings.  In re Marshall,
167 Wash. 2d at 65.  At some point after May 25, 2006, Killian
applied for a position as disciplinary counsel with the WSBA.  Id.
On or about June 22, 2006, Killian recused and her previous orders
were vacated.  Id.  The next two hearing officers were removed
after challenges to their appointments.  Id.  Finally, on August
10, 2006, the chief hearing officer, James M. Danielson
("Danielson"), appointed himself as hearing officer in Marshall's
case.  Id.  Marshall did not challenge Danielson's appointment
during the proceedings.  Id.  Sometime around March 2007, following
a seven-day hearing, Danielson made 175 findings of fact and
recommended that Marshall be disbarred.  Id. at 58.  The WSBA
Disciplinary Board unanimously agreed.  Id.

The case proceeded to the Washington Supreme Court, where
Marshall disputed Danielson's factual findings and argued that his
due process rights had been violated because Danielson was biased.
Id. at 66.  Specifically, Marshall argued that: (1) Danielson knew
that Killian had applied for a job with the WSBA, (2) Danielson

---

[3] The WSBA Defendants filed a Request for Judicial Notice ("RJN")
in support of their motion for judgment on the pleadings and their
reply papers, attaching a number of exhibits.  ECF No. 51 ("RJN").

received an annual salary from the WSBA and participated in WSBA
committees, and (3) Danielson refused some of Marshall's requests
for discovery and testimony.  Id. at 68.

On October 1, 2009, the Washington Supreme Court issued a
final unanimous ruling, rejecting each of Marshall's complaints
against Danielson.  Id. at 69.  The court found that: Marshall's
complaint concerning Killian was "unfounded" since Killian had
recused and her orders had been vacated; Danielson's WSBA salary
"d[id] not bias him any more than the salary paid to any judge who
hears cases brought by the State of Washington"; and Marshall
"fail[ed] to make a compelling argument that any of Mr. Danielson's
adverse rulings were the result of bias or prejudice."  Id.  The
court ultimately decided to disbar Marshall, finding that he
"committed a number of different violations, which individually
would have warranted disbarment."  Id. at 58.  On December 23,
2009, the court denied Marshall's request for a rehearing.  In re
Marshall, 2009 Wash. LEXIS 1191 (Dec. 23, 2009).

Subsequently, Marshall appealed his disbarment, filing a
petition for writ of certiorari with the United States Supreme
Court.  Petition for a Writ of Certiorari, Marshall v. WSBA, No.
09-1357 ("Cert Pet."), 2010 U.S. S. Ct. Briefs LEXIS 1765.  Among
other things, Marshall argued that Washington's disciplinary system
was "structurally and operationally dysfunctional," that his
disbarment proceedings had been conducted in "bad faith," and that
his due process rights had been violated.  See id. at **40-43.
Again, Marshall complained that Danielson knew about Killian's job
application with the WSBA, that Danielson was biased because of his
involvement with the WSBA, and that Danielson unfairly ruled

against Marshall's discovery requests. Id. at 40-41. The United States Supreme Court denied Marshall's petition. Marshall v. WSBA, 130 S. Ct. 3480 (2010).

### B. Marshall's First Collateral Attack

While his disciplinary proceedings were still pending in Washington state court, Marshall filed two unsuccessful collateral attacks in federal court. First, on May 15, 2008, Marshall filed suit against the WSBA and the State of Washington in the federal district court for the Western District of Washington. RJN Ex. D. The case was assigned to Judge James L. Robart ("Judge Robart"). Marshall sued under 42 U.S.C. § 1983, alleging violations of substantive due process, procedural due process, equal protection, his First Amendment rights, his right to counsel, and the duty of fair representation. Id. Once again, Marshall complained of Danielson and Killian's involvement with his disciplinary proceedings. See, e.g., id. at 11-13. Marshall also argued that "the attorney disciplinary system in the State of Washington is fraught with racial discrimination" and that the WSBA "discriminates against ethnic minorities in investigations, charging, prosecuting, and sanctioning attorneys . . . ." Id. at 38. Marshall suggested that he had been singled out for selective enforcement because he is an African-American.[4] Id. at 39.

Marshall relied on four ABA studies as evidence of structural

---

[4] As evidence of racial discrimination, Marshall pointed out that the three other attorneys who worked with him on one of the matters for which he was sanctioned had not been subject to disciplinary proceedings. RJN Ex. D at 39. Two of these attorneys were Caucasian, the other, Wheeler, was African-American. Id. Marshall alleged that "the only known factor distinguishing Wheeler and Marshall is that Wheeler had been a WSBA hearing officer and was known by the WSBA staff." Id.

deficiencies in Washington's disciplinary system: (1) the 1970 "Clark Report," which found that few lawyers serving within the disciplinary system were minorities; (2) the 1992 "McKay Report," which recommended that all disciplinary prosecutors be independent of the WSBA and an appropriate number of adjudicators should be minority members; (3) the "1993 ABA report," which recommended that Washington's disciplinary system be made independent from the WSBA; and (4) the "2006 ABA Report," which called for "hearing officers, review committees, and the Disciplinary Board to be subject to oversight by an independent administrative committee, while disciplinary counsel would be subject to primary oversight by the Washington Supreme Court." Id. at 5-7.

Judge Robart dismissed the case with prejudice, finding that he lacked jurisdiction to intervene in a disciplinary action. RJN Ex. E at 5. Judge Robart also stated that Marshall could challenge the findings of the disciplinary board in Washington state courts and, after a final decision by the Washington Supreme Court, Marshall could seek review in the United States Supreme Court. Id.

**C.  Marshall's Second Collateral Attack**

Marshall's second collateral attack was filed in federal bankruptcy court. On May 1, 2009, one week after Marshall's oral argument in his disbarment hearings before the Washington Supreme Court, Marshall filed a voluntary bankruptcy petition. RJN Ex. H. Then on October 27, 2009, almost one month after the Washington Supreme Court issued its disbarment order, Marshall filed an adversary complaint against Washington State and the WSBA in bankruptcy court, again alleging due process, equal protection, and fair representation violations in connection with his disbarment

proceedings.  RJN Ex. L at 61-65.  The case was assigned to Judge Philip H. Brandt ("Judge Brandt").  Marshall amended his complaint once as a matter of right, adding eight new defendants, all of whom are named in the instant action.  RJN Ex. M.  As in prior proceedings, Marshall alleged structural deficiencies and racial bias in the Washington disciplinary system, citing the same four ABA reports.  See id. at 6-10.  Once again, Marshall alleged that his rights to a fair and impartial hearing were violated because Danielson and Killian were biased.  See id. at 17-32.  Though the issue was not raised in Marshall's amended complaint, later motion practice and appeals revealed that Marshall's aim was to avail himself of the automatic stay imposed under the Bankruptcy Code to prevent the Washington Supreme Court from disbarring him.[5]  See RJN Ex. R at 3-4.

Judge Brandt dismissed the action with prejudice, finding, among other things, that Marshall's claims were barred by the Rooker-Feldman doctrine and that the WSBA Defendants were immune from suit.  RJN Exs. P, Q at 5-7.  Judge Brandt also denied Marshall's motion to file a second amended complaint -- the complaint would have added as defendants members of the WSBA Board of Governors and the justices of the Washington Supreme Court.  See RJN Ex. Q at 20.

Marshall then appealed the bankruptcy court's decision to the federal district court for the Western District of Washington and then to the Ninth Circuit Court of Appeals.  Both appeals were denied.  The federal district court judge, Judge John C. Coughenour

---

[5] Marshall raised a similar issue in his first petition for a writ of certiorari before the United States Supreme Court.

("Judge Coughenour"), concluded that Marshall's due process claims had been "conclusively adjudicated and decided by the Washington Supreme Court, and [Marshall] is barred from re-litigating those questions under the Rooker-Feldman doctrine, and from litigating the claims he could have brought before that court by claim preclusion." RJN Ex. R. at 7. Judge Coughenour also remarked: "There could be no more iconic case where Rooker-Feldman must apply." Id. The Ninth Circuit affirmed, concluding that it lacked jurisdiction to review Marshall's disbarment under Rooker-Feldman and that Marshall's "conjectured constitutional 'violations' . . . are simply attempts to relitigate due process arguments conclusively decided by the Supreme Court of Washington during his disbarment proceedings." Marshall v. Wash. State Bar Ass'n, 448 Fed. Appx. 661, 662 (9th Cir. 2011). The Ninth Circuit also upheld the lower courts' decision to deny Marshall leave to amend: "Adding additional members of the Bar Association or the Justices of the Supreme Court of Washington as defendants would be futile under Rooker-Feldman and the principles of absolute immunity, in addition to needlessly prolonging this vexatious and wasteful litigation." Id. at 663.

Marshall once again filed a petition for a writ of certiorari with the United States Supreme Court. That petition was denied on April 16, 2012. ECF No. 76.

**D.  Marshall's Third Collateral Attack -- The Instant Action**

On April 22, 2011, Marshall filed the instant action pro se, his third collateral attack on the proceedings that culminated in his disbarment. Marshall's Third Amended Complaint ("TAC"), the operative complaint in the action, looks much like the complaints

he filed in his previous collateral attacks. Compare TAC with RJN

Exs. D, L, M. Once again, Marshall targets the structure of the

Washington disciplinary system (again citing the Clark and 1993 and

2006 ABA Reports), and the alleged bias of Danielson and Killian.

See TAC ¶¶ 17, 36, 55-76.

Marshall explicitly alleges that his disbarment and previous

suspensions were the result of racial discrimination. See, e.g.,

id. ¶¶ 21-31. As in his first collateral attack and his disbarment

proceedings, Marshall alleges that Defendants selectively enforced

Washington's ethics rules, refusing to take action against white

lawyers while selectively targeting African-American attorneys for

disciplinary action. See, e.g., id. ¶¶ 31, 37-41. Marshall also

suggests that he was singled out for prosecution because he brought

discrimination claims against Defendants. See id. ¶ 82.

For the first time, Marshall alleges various ex parte

communications among Danielson, the WSBA, and the justices of

Washington Supreme Court during various WSBA meetings. See, e.g.,

id. ¶¶ 71, 73, 78-81, 83, 85. For example, Marshall alleges:

> [O]n March 28, 2007, on the very night before defendant
> Danielson issued his decision in the Marshall case, a
> meeting of the discipline committee task force #2 of the
> [WSBA] Board of Governors was held in which Danielson was
> a member. While defendant Danielson was not present, he
> was immediately notified of the results of the meeting by
> e-mail. Included in this meeting were two members of the
> Board of Governors and one member of the Disciplinary
> Counsel's Office. These undisclosed ex parte contacts
> fraudulently corrupted the legal process by influencing
> judges and members of the Disciplinary Board.

Id. at 71. Marshall does not specifically allege what was

discussed during this meeting or any of the other meetings

referenced in the TAC.

Unlike the previous actions, Marshall's current suit frames Defendants' alleged wrongdoing as employment discrimination, alleging violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Section 49.60.030 of the Revised Code of Washington.[6]  See TAC ¶¶ 42, 53, 55.  However, Marshall's goal appears to be the same: he seeks damages and injunctive relief in connection with his disciplinary proceedings.

**III. LEGAL STANDARD**

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). Moreover, a motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss, and thus the pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009); see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citing Johnson with approval).  A claim is plausible on its face when the plaintiff pleads "factual content

---

[6] Marshall filed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") on September 30, 2009 and the EEOC issued Marshall a Notice of Right to Sue on January 24, 2011.  RJN Exs. W, X, Z.

**United States District Court**
For the Western District of Washington

that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v.</u>

<u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 556 (2007)).

**IV.  DISCUSSION**

> **A.  The Court Takes Judicial Notice of Filings in Other Cases**
> **Related to Marshall's Disbarment**

As a preliminary matter, the Court addresses the parties'

arguments regarding judicial notice.  Defendants have requested

that the Court take judicial notice of pleadings, orders, opinions,

and other filings related to Marshall's disciplinary proceedings,

Marshall's previous attempts to litigate the propriety of his

disbarment, and Marshall's filings with the EEOC.  The Ninth

Circuit has held that courts may properly take judicial notice of

proceedings in other courts, court filings, and other matters of

public record.[7]  <u>See</u> <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442

F.3d 741, 746 n.6 (9th Cir. 2006); <u>United States ex rel. Robinson</u>

<u>Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th

Cir. 1992).  Accordingly, Defendants' request for judicial notice

is GRANTED.

Marshall objects to Defendants' request for judicial notice on

the grounds that Defendants "have not shown or even proffered that

these proposed documents are relevant to this case."  Surreply at

10.  This argument lacks merit.  The documents attached to the RJN

are clearly relevant to the issue of whether Marshall has had a

---

[7] The Ninth Circuit has also held that judicial notice of EEOC
filings is proper.  <u>Cunningham v. Litton Indus.</u>, 413 F.2d 887, 889
(9th Cir. 1969).

full and fair opportunity to litigate this matter in prior federal and state proceedings.  Marshall also argues that relying on facts outside the pleadings would violate the "longstanding precedent that directs the Court to construe the Complaint in the light most favorable to the non-moving party."  Id. at 11.  This argument is also unavailing.  A court does not automatically transform a motion for judgment on the pleadings into a motion for summary judgment by relying on court pleadings, filings, and decisions to determine whether a claim has already been litigated.  See Reyn's Pasta Bella, 442 F.3d at 746 n.6 (taking judicial notice of court filings "[t]o determine what issues were actually litigated" in a prior action).

**B.   Marshall's Claims Are Barred By Rooker-Feldman**

Defendants argue that Marshall's current collateral attack, like his two prior collateral attacks, is barred by the Rooker-Feldman doctrine.  WSBA Defs.' Mot. at 14-18; State Defs.' Mot at 18-19.  The Court agrees.

Rooker-Feldman is derived from two Supreme Court cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  "It stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state-court judgments."  Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010), cert. denied, 131 S. Ct. 1492 (2011).  A suit constitutes a forbidden de facto appeal when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision."  Id.  (internal quotations and citation omitted).  Put

another way: "If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling . . . , then the federal complaint must be dismissed for lack of subject matter jurisdiction." Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003).

This case presents facts similar to others which have been dismissed under Rooker-Feldman, including Feldman, one of the cases from which the doctrine takes its name. In Feldman, the District of Columbia's highest court denied the plaintiff's applications for admission to the bar of the District of Columbia. 460 U.S. at 468. Instead of appealing to the United States Supreme Court, the plaintiff filed suit in federal district court, alleging violations of the Fifth Amendment and Sherman Act and seeking an order requiring the defendants to grant the plaintiff immediate admission to the District of Columbia bar. Id. The district court found that it lacked jurisdiction. Id. at 470. The United States Supreme Court agreed, finding that district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." Id. at 486.

Likewise, the Ninth Circuit has applied Rooker-Feldman to bar federal lawsuits which challenged state attorney disciplinary proceedings. For example, in Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 605 (9th Cir. 2005), the plaintiff was licensed to practice in Oklahoma but lived and practiced in Arizona. The Supreme Court of Arizona censured the plaintiff for

the unauthorized practice of law and, subsequently, the Supreme
Court of Oklahoma disbarred him.  <u>Mothershed</u>, 410 F.3d at 605.  The
plaintiff filed suit against the disciplinary commissions and
supreme courts of Arizona and Oklahoma in federal district court,
asserting claims under 42 U.S.C. § 1983 for due process and other
constitutional violations, as well as various common law claims.
<u>Id.</u>  The Ninth Circuit upheld the district court's conclusion that
it lacked subject matter jurisdiction to review the plaintiff's
disciplinary proceedings under <u>Rooker-Feldman</u>.  <u>Id.</u> at 607.

The Court finds that Marshall's claims in the instant action
are precisely the type of collateral attack on state judicial
proceedings that are barred under <u>Rooker-Feldman</u>.  Marshall seeks
to directly and indirectly challenge the final decision of the
Washington Supreme Court to disbar and suspend him, asserting those
decisions were erroneous, unlawful, and discriminatory.  This Court
lacks jurisdiction to do so.  Even if Marshall is not seeking to
directly overturn his disbarment order, his claims are still barred
since all of his alleged injuries and damages flow from that
order.[8]  <u>See</u> TAC ¶¶ 47 ("In disciplining [Marshall], the Defendants
treated [him] in a disparate and racially discriminatory fashion

---

[8] Marshall has taken inconsistent positions on the nature of the
injunctive relief he seeks.  The TAC is silent on the matter.  At
the Court's December 5, 2011 hearing, Marshall stated that he
wanted the Court to "enjoin the disbarment order."  ECF No. 50
("Dec. 5, 2011 Hearing Transcript") at 24.  At the May 7, 2012
hearing, Marshall initially indicated that, under <u>Rooker-Feldman</u>,
the Court does not have the power to overturn the <u>Washington</u>
Supreme Court's disbarment order and that he was only seeking
systemic reforms to the WSBA disciplinary system.  Later in the
hearing, he changed course and again indicated that he was seeking
to enjoin the disbarment order.  The Court assumes that Marshall's
first and last statements on the issue are accurate.  In any event,
Marshall lacks standing to ask the Court to reform the WSBA
disciplinary system as he is no longer a member of the bar.  <u>See</u>
<u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983)

1  [in violation of Title VII] . . . ."), 53 ("The actions of the

2  Defendants in suspending . . . and then disbarring [Marshall]  . .

3  . constitute racial discrimination . . . in violation of 42 USC §

4  1981[.]"), 55 ("In suspending [Marshall] . . . and later disbarring

5  him . . . the Defendants practiced racial discrimination in

6  violation of RCW 49.60[.]").  Accordingly, his claims are

7  inextricably intertwined with the Washington Supreme Court's

8  decision and the Court cannot rule on them without undercutting

9  that ruling.[9]

10 Even if the Court had some doubt about its lack of

11 jurisdiction (and it does not), res judicata would require the

12 Court to apply Rooker-Feldman.  As discussed in more detail in

13 Section IV.C infra, the instant action raises the same claims that

14 were brought or could have been brought in Marshall's two prior

15 collateral attacks in federal court.  Both of these previous

16 collateral attacks were dismissed with prejudice on Rooker-Feldman

17 grounds.  Accordingly, the Court could not possibly reach a

18 different conclusion here.

19 Marshall argues that Rooker-Feldman should not apply in the

20 instant action because he did not have an opportunity to present

21 his claims for racial discrimination in state court.  Opp'n at 17-

22 18.  This argument is predicated on the Eleventh Circuit's decision

23

24 [9] At the Court's May 7, 2012 hearing, Marshall indicated that he is
also bringing a claim for breach of contract, based on some kind of
25 implied contract between himself and the WSBA.  Marshall explained
that the WSBA breached this contract when it disciplined and
26 disbarred him in a racially discriminatory manner.  This claim
fails as it is not pled in the TAC.  Even if it was, the claim
27 would be barred by Rooker-Feldman as it is inextricably intertwined
with the Washington Supreme Court's disbarment order.  Accordingly,
28 granting Marshall leave to amend his complaint for a third time
would be futile.

in <u>Wood v. Orange</u>, 715 F.2d 1543 (11th Cir. 1983). That case is inapposite. In <u>Wood</u>, a state court entered liens against the plaintiffs, without providing them notice or an opportunity to participate in the lien proceedings. <u>Wood</u>, 715 F.2d at 1545. The plaintiffs subsequently filed suit in federal district court alleging due process violations. <u>Id.</u> at 1545. On appeal, the Eleventh Circuit found that the "crucial issue" in determining whether <u>Rooker-Feldman</u> should apply was "whether plaintiffs had a reasonable opportunity to raise their objections in the proceedings where the judgment creating the liens was entered and affirmed." <u>Id.</u> at 1547. The court held that the plaintiffs were denied such an opportunity because they did not learn of the liens until their creditors called, "well after the time for filing an appeal had elapsed." <u>Id.</u> at 1548.

Unlike the plaintiffs in <u>Wood</u>, Marshall was well aware of the disciplinary charges brought against him and fully participated in the disciplinary proceedings. Further, Marshall admits that he filed an EEOC complaint for racial discrimination in connection with his May 2007 suspension in May 2008 and that he learned of the alleged misconduct in his disbarment proceedings in August 2008.[10] Opp'n at 17, n.1. Accordingly, Marshall had a reasonable opportunity to present his allegations of racial discrimination and bias to the Washington Supreme Court -- both during his disbarment hearing and in his petition for rehearing -- as well as to the

---

[10] The Court notes that Marshall could have advanced his current theories of racial discrimination even before May 2008. Marshall's charges of racial discrimination are predicated upon allegations that the WSBA has a history of selectively enforcing ethics violations. Evidence of this alleged selective enforcement was presumably available to Marshall at the outset of his disciplinary proceedings.

United States Supreme Court in his first petition for a writ of
certiorari.  Indeed, the Washington Supreme Court addressed and
rejected Marshall's charges of bias in its disbarment order.  <u>In re</u>
<u>Marshall</u>, 167 Wash. 2d at 69.  Marshall suggests that the fact that
the Washington Supreme Court never discussed "racial
discrimination" in its order somehow precludes application of
<u>Rooker-Feldman</u> in the instant action.  Opp'n at 18-19.  Also, at
the May 7, 2012 hearing, Marshall argued that <u>Rooker-Feldman</u> should
not apply since he did not become aware of the full extent of
Defendants' alleged misconduct until recently.  But that is not the
law.  The pertinent inquiry is whether Marshall had a reasonable
opportunity to raise objections in the state court proceedings.  He
did have such an opportunity and did in fact raise objections.  As
such, his claim is barred under <u>Rooker-Feldman</u>.

Next, Marshall contends that there is a general exception to
<u>Rooker-Feldman</u>, whereby lower federal courts may review state court
judgments that are procured by fraud, deception, or mistake.  Opp'n
at 18.  Marshall contends that the WSBA engaged in "fraud,
deception, and malicious ethical violations" in order to procure
his disbarment by assigning biased hearing officers, i.e., Killian
and Danielson, to his disciplinary proceedings.  <u>Id.</u> at 19.  He
further contends that high-ranking bar officials and Washington
Supreme Court justices turned a blind eye to this alleged
misconduct.  <u>Id.</u>

This argument fails for a number of reasons.  First, the Ninth
Circuit has never recognized such an exception to <u>Rooker-Feldman</u>.
Second, the authority on which Marshall relies, <u>In re Sun Valley</u>
<u>Foods Co.</u>, 801 F.2d 186 (6th Cir. 1986), is inapposite.  In <u>Sun</u>

Valley, the Sixth Circuit said of Rooker-Feldman: "A federal court 'may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake . . . .'" 801 F.2d at 189 (quoting Resolute Ins. Co. v. State of N. Carolina, 397 F.2d 586, 589 (4th Cir. 1968)). The language the Sixth Circuit quotes from Resolute Insurance concerns an exception to res judicata, not Rooker-Feldman. Accordingly, the Court declines to follow Sun Valley. See West v. Evergreen Highlands Ass'n, 213 Fed. Appx. 670, 674 (10th Cir. 2007) (stating "there is good reason to balk" at the Rooker-Feldman exception enunciated in Sun Valley). Third, even if Sun Valley was controlling law, it would not save Marshall's claims. The Sun Valley exception depends on the improper procurement of a judgment, for example, where a party "deceived the Court into a wrong decree." Sun Valley, 801 F.2d at 189 (internal quotations omitted). Marshall does not allege that the Washington Supreme Court was "deceived" into disbarring him. Rather, Marshall claims that the Washington Supreme Court "justices were aware of the wrongdoing but refused to stop it." Opp'n at 19. Further, Marshall's argument is circular. "He claims in effect that the Rooker-Feldman doctrine barring federal review of state decisions does not apply if, by engaging in the very review the doctrine prohibits, a federal court concludes that a state court erred. Such a self-justifying exception would swallow the Rooker-Feldman doctrine whole." West, 213 Fed. Appx. at 674. Accordingly, the "procurement by fraud" exception, to the extent that it exists, does not apply here.

At the Court's May 7, 2012 hearing, Marshall also argued that

19

1  the Washington Supreme Court's decision is not entitled to

2  deference since it was not reached through a judicial process.

3  Marshall complained that there is no "separation of powers" in the

4  Washington disciplinary system: The WSBA hires the hearing officers

5  and the prosecutors; the Washington Supreme Court justices who

6  review the WSBA hearing officers' findings have served as

7  presidents of the WSBA; and the hearing officers, prosecutors, and

8  Washington Supreme Court justices hold administrative meetings

9  that, according to Marshall, amount to ex parte contacts.  Marshall

10  also faults the Washington Supreme Court for failing to make its

11  own factual findings during his disbarment proceedings.

12      The Court has a number of concerns with the merits of

13  Marshall's position.  However, the Court need not reach the merits.

14  These arguments were raised and rejected in Marshall's prior

15  collateral attacks.  In his first collateral attack, Marshall also

16  complained about the structure of the WSBA disciplinary system,

17  including the independence of its various branches.  See, e.g., RJN

18  Ex. D ¶¶ 3.14-3.15.  Judge Robart dismissed the action stating that

19  Marshall should "avail[] himself of the Washington state courts to

20  challenge the finding of the disciplinary board."  RJN Ex. E at 5.

21  In his second collateral attack, Marshall made almost identical

22  allegations.  RJN Ex. M ¶¶ 4.11-4.24.  Again his claims were

23  dismissed, this time expressly on Rooker-Feldman grounds.  RJN Ex.

24  P at 2.  Accordingly, the Court cannot and will not revisit these

25  issues here.

26      Like Judge Robart, Judge Brandt, Judge Coughenour, and the

27  Ninth Circuit, the Court finds that it lacks jurisdiction over this

28  action under Rooker-Feldman.

1         **C.**   **Marshall's Claims Are Also Barred By Res Judicata**

2      Even if Marshall's claims were not barred by <u>Rooker-Feldman</u>,

3 they would fail under res judicata. Marshall has already raised

4 substantially similar claims before the Washington Supreme Court,

5 Judge Robart, Judge Brandt, Judge Coughenour, the Ninth Circuit,

6 and the United States Supreme Court. In each and every case,

7 Marshall's claims have been rejected. Marshall's employment

8 discrimination claims are simply another attempt to relitigate his

9 previous claims. Marshall is not entitled to yet another bite at

10 the apple.

11      Res judicata, also known as claim preclusion, bars

12 relitigation of a claim that has been determined by a final

13 judgment. <u>Williams v. Leone & Keeble, Inc.</u>, 171 Wash. 2d 726, 730

14 (Wash. 2011). Res judicata also bars plaintiffs from recasting

15 their claims under a different theory so that they may sue again.

16 <u>Feminist Women's Health Ctr. v. Codispoti</u>, 63 F.3d 863, 867 (9th

17 Cir. 1995). "All issues which might have been raised and

18 determined [in prior litigation] are precluded." <u>Id.</u> (internal

19 citations and quotations omitted). "Res judicata applies where the

20 subsequent action involves (1) the same subject matter, (2) the

21 same cause of action, (3) the same persons or parties, and (4) the

22 same quality of persons for or against whom the decision is made as

23 did a prior adjudication." <u>Williams</u>, 171 Wash. 2d at 730. The

24 Court finds that all elements of res judicata have been satisfied

25 here.

26      First, a final judgment was rendered in Marshall's disbarment

27 proceedings, <u>In re Marshall</u>, 167 Wash. 2d at 89, as well as in his

28 two prior collateral attacks, which were dismissed with prejudice,

RJN Exs. E at 6, P at 2.  Marshall contends that his first

collateral attack was "dismissed without prejudice" and "[no]

judgment on the merits was ever entered."  Opp'n at 22.  Marshall

misstates the facts.

Second, the subject matter of this case is identical to the

subject matter involved in Marshall's state disciplinary

proceedings and his two collateral attacks: the propriety of

Marshall's prior state disciplinary proceedings and disbarment.

Marshall argues, without further explanation, that his claims are

not barred because they arose after October 1, 2009 -- the date of

the Washington Supreme Court's disbarment order.  Opp'n at 22.

This argument lacks merit.  All of the relevant conduct alleged in

the TAC occurred before Marshall's disbarment.[11]  Further, in his

EEOC Intake Questionnaire, Marshall concedes that the last

allegedly discriminatory act occurred on October 1, 2009.  See RJN

Ex. W.

Third, the causes of action in this case are identical to

those that were asserted or could have been asserted in Marshall's

prior actions.  Marshall argues that his state and federal

employment discrimination claims are not barred because they were

never alleged, considered, or rejected in his previous actions.

Opp'n at 23.  However, a party cannot avoid res judicata merely by

recasting its previous claims as a new legal theory, by raising new

---

[11] Marshall does allege: "From 2002 to the present, [Marshall]
requested, but Defendants discriminated against Plaintiff by
denying . . . services and otherwise affected the terms,
conditions, or privileges of [Marshall]'s employment because of his
race."  TAC at 2.  However, it is unclear why WSBA would have a
duty to provide services, such as "bar materials, continuing legal
education courses, [or] law office management counseling" to a
disbarred attorney.  See id.

**United States District Court**
For the Western District of Washington

claims that could have been brought in a prior action, or by alleging conduct not alleged previously. See Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982). That is precisely what Marshall is attempting to do here.

The Ninth Circuit applies several criteria to determine whether successive lawsuits involve a single cause of action:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

Id. at 1201-1202 (internal quotations and citations omitted). The fourth, "most important," criterion is satisfied here. See id. at 120. All of Marshall's actions arose out of the same transactional nucleus of facts: the proceedings that culminated in his disbarment. The other criteria are also satisfied. The Court cannot award the injunctive and declaratory relief requested by Marshall without impairing the Washington Supreme Court's disbarment order or Judge Robart, Judge Brandt, Judge Coughenour, and the Ninth Circuit's findings that Marshall's collateral attacks are barred under Rooker-Feldman. Marshall intends to rely on the same evidence in the instant action that he has cited in prior complaints and petitions, including Killian's job application, Danielson's WSBA salary, the Clark Report, the McKay Report, and the 1993 and 2006 ABA reports. Additionally, as in his disbarment proceedings and his first collateral attack, Marshall now alleges that he was singled out for selective enforcement because he is African American. Compare TAC ¶¶ 31, 37-41, with RJN Exs. A ¶ 167,

23

D at 39.  Finally, Marshall asserts the same rights here that he previously asserted in his state and federal court actions, including his rights to due process and equal protection in his disbarment proceedings.  Compare TAC ¶¶ 17, 19, 38, 49 with RJN Exs. A ¶ 167, D at 43-44, M at 45-50.

Fourth, the parties in this action are identical to, or in privity with, the parties to Marshall's prior state disbarment proceedings or the parties to Marshall's prior collateral attacks. Although the Washington Supreme Court justices were named as Defendants for the first time in the instant action, Marshall has previously attempted to sue them in connection with his disbarment. In his second collateral attack, Judge Brandt denied Marshall leave to amend his complaint so as to add the justices as defendants. See RJN Ex. P.  Judge Coughenour affirmed finding that amendment would have been "futile" under Rooker-Feldman.  Id.  The Ninth Circuit also affirmed, concluding that adding more defendants would only "prolong[] this vexatious and wasteful litigation."[12] Marshall, 448 Fed. Appx. at 663.

The final element of res judicata "simply requires a determination of which parties in the second suit are bound by the judgment in the first suit."  Ensley v. Pitcher, 152 Wash. App. 891, 905 (Wash. Ct. App. 2009).  Here, Marshall's prior collateral attacks named the WSBA and the State of Washington, as does this one.  All of the WSBA Defendants named in this case are in privity with the WSBA.  The Washington Supreme Court is also bound by its

_____

[12] Even if the Washington Supreme Court was not involved in the prior actions, its justices are entitled to judicial immunity.  See Section IV.D infra.

24

order disbarring Marshall.  Further, Marshall defended the prior state disbarment proceeding and filed the prior collateral attacks challenging the disbarment proceedings.  Accordingly, all elements of res judicata are met.[13]

   **D.   Marshall's Claims Could Be Dismissed on a Number of Other Grounds**

   As Marshall's claims are barred by Rooker-Feldman and res judicata, the Court need not review all of the other grounds for dismissal claimed by Defendants.  However, having considered the parties' other arguments, the Court notes that, even if it did have jurisdiction, Marshall's claims would likely fail for a number of other reasons.  As the Court has already determined that it lacks jurisdiction, it does not review these issues in significant length or detail.

   Judicial Immunity:  Marshall's claims against the WSBA and State Defendants are also barred under the doctrine of judicial immunity.  Judicial and quasi-judicial immunity are not only available to judges but also to others who have a sufficiently close nexus to the adjudicative process, including prosecutors, administrative law judges, and agency officials performing functions analogous to those of a prosecutor.  See Hirsch v. Justices of the Supreme Court, 67 F.3d 708, 715 (9th Cir. 1995).  Several cases have applied the doctrine in circumstances such as this, where a plaintiff attorney sues in connection with disciplinary proceedings.  See id.; Clark v. Washington, 366 F.2d

---

[13] Defendants also argue that Marshall's claims are barred by collateral estoppel.  The merits of this argument are less clear. As Marshall's claims are clearly barred by Rooker-Feldman and res judicata, the Court does not address the issue.

**United States District Court**
For the Western District of Washington

678, 681 (9th Cir. 1966).  Marshall does not adequately address or distinguish any of these cases.

Title VII:  Marshall's Title VII claims fail for a variety of reasons.  As an initial matter, Marshall's claim is time barred under 42 U.S.C. § 20000e-5(e)(1) since the last alleged unlawful employment practice alleged by Marshall occurred on October 1, 2009, the date of his disbarment, over a year before Marshall filed his complaint in the instant action.  Further, Marshall cannot bring a Title VII claim for employment discrimination against Defendants because he was never employed by them.  See Camacho v. Puerto Rico Ports Auth., 369 F.3d 570, 577-78 (1st Cir. 2004). Relying on the D.C. Circuit's decision in Sibley Memorial Hospital v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973), Marshall contends that Title VII is applicable because his disbarment interfered with his employment prospects.  However, this interference theory only applies where the defendant has a "highly visible nexus" with the creation and continuance of direct employment relationships, Sibley, 488 F.2d at 1342, or where the defendant exercises a degree of control over the third-party employer.  See, e.g., Ass'n of Mexican-Am. Educators v. State of California, 231 F.3d 572, 581 (9th Cir. 2000) (applying interference theory where "state's involvement is not limited to general legislative oversight but, rather, affects the day-to-day operations of [the third-party employer]").  No such relationship exists here.  Further, a number of courts have rejected the notion that agencies which regulate professional licenses may be held liable under such a theory.  See, e.g., Fields v. Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1021 (5th Cir. 1991).

### E.   **Marshall Is a Vexatious Litigant**

The WSBA Defendants have asked the Court to declare Marshall a vexatious litigant and to enter a pre-filing order concerning any future claims filed in connection with Marshall's disbarment.  WSBA Defs.' Mot. at 43.  Before a court may file such pre-filing restrictions, the court must apply the following four guidelines: (1) the litigant must be "provided with adequate notice and a chance to be heard before the order [is] filed"; (2) the court must create a record of review which includes a "listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed"; (3) the court must make "substantive findings as to the frivolous or harassing nature of the litigant's actions"; and (4) "the[] order[] must be narrowly tailored to closely fit the specific vice encountered." De Long v. Hennessey, 912 F.2d 1144, 1147-48 (9th Cir. 1990).

The Court finds that there is adequate justification for finding that Marshall is a vexatious litigant and for entering a pre-filing order against him.  First, Marshall was provided with adequate notice.  The WSBA Defendants requested a pre-filing order in their moving papers and Marshall had an opportunity to address that request in his opposition papers, in his surreply, and at the Court's May 7, 2012 hearing.  Marshall declined to do so.  Second, the Court has listed all of Marshall's previous cases and filings in Section II supra.  Third, the record in this case amply supports a finding that Marshall is a vexatious litigant and that a pre-filing order is necessary to prevent further abuse of the judicial process.  Marshall's allegations in the instant action are similar or identical to those he asserted or could have asserted before the

Washington Supreme Court, the United States Supreme Court (in two separate cert petitions), Judge Robart, Judge Brandt, Judge Coughenour, and the Ninth Circuit. Each of these six courts rejected Marshall's allegations. Even before Marshall filed the instant action, the Ninth Circuit went so far as to deem his second collateral attack "vexatious and wasteful." Marshall, 448 Fed. Appx. at 663. Thus, Marshall was on notice that his claims in the instant action were barred by Rooker-Feldman and res judicata. Nevertheless, he proceeded to bring yet another suit against fifty-four defendants, alleging the same claims that have been raised and rejected before.[14] Fourth, the Court finds that the restrictions set forth in the conclusion below are narrowly tailored to address and prevent Marshall's vexatious and wasteful re-litigation and collateral attack of his disbarment while not infringing upon Marshall's right of access to the courts.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motions for judgment on the pleadings. Bradley Marshall's claims in this matter are hereby DISMISSED WITH PREJUDICE in their entirety. The Court also enters the following pre-filing order: Should Marshall wish to file any future claims in this District against any Defendant in this action, whether individually or in

---

[14] At the December 5, 2011 hearing, when there were only fifty-one defendants in the case, Marshall represented to the Court that he would endeavor to voluntarily dismiss "people that shouldn't be in the case." Dec. 5, 2011 Hearing Transcript at 25. Marshall has yet to dismiss a single defendant. Instead, he amended his complaint again to name additional parties. At the May 7, 2012 hearing, Marshall conceded that a number of these fifty-four defendants should be dismissed as they had a tenuous connection to the case.

any combination thereof, each filing shall be preceded by a Motion for Leave.  The Motion for Leave shall contain a certification under Federal Rule of Civil Procedure 11 providing the factual and legal basis for the claim and the specific reason(s) why it falls outside the scope of this Order, and shall be accompanied by a copy of the pleading or document Marshall seeks leave to file.  Such future claims shall not be deemed "filed," for purposes of tolling the statute of limitations or otherwise, and shall not be served until and unless the Court grants the Motion for Leave.  This pre-filing order shall apply only to future claims that are directly or indirectly related to Marshall's disbarment or the disciplinary proceedings described above.

IT IS SO ORDERED.

Dated:  May 23, 2012

_____
UNITED STATES DISTRICT JUDGE